```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                  CHARLESTON DIVISION
```

**ACADIAN ENERGY RESOURCES, LLC and**
**J. HOWARD BASS & ASSOCIATES, INC.,**

    Plaintiffs,

v.                      CIVIL ACTION NO. 2:09-00150

**JAMES R. CARPENTER and**
**SUNSHINE PROPERTY INVESTMENTS, LLC, and**
**WILLIAM POLAN and**
**ROBERT SHANE POLAN,**

    Defendants.

**and**

**JAMES R. CARPENTER,**

    Third-Party Plaintiff,

v.

**JAMES H. BASS**
**J. HOWARD BASS & ASSOCIATES, INC.,**
a Texas corporation, and **RICHARD CHEATHAM** and
**TSAR-WV, LLC,**
a Delaware limited liability company,
**ACADIAN ENERGY RESOURCES, LLC,**
a West Virginia limited liability company,
**ACADIAN ENERGY RESOURCES, INC.**
a Delaware corporation, and
**JOHN AND JANE DOES 1-99,**

    Third-Party Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is a motion to intervene as a plaintiff filed by Daesung Energy Resources, Inc., on March 31, 2009.

Daesung Energy Resources, Inc., is a Texas corporation. It holds a judgment against defendant James Howard Bass, a third-party defendant in this action who claims an ownership interest in Acadian Energy Resources, LLC ("Acadian LLC"). The judgment was entered in Texas on May 8, 2000, in an underlying action involving Daesung, Bass, and others. The Texas judgment is apparently enforceable in a joint and several manner. The sums assessed against Bass were $1,750,000.00 for compensatory damages, $401,783.00 in attorneys' fees, and an additional $1,389,576.58 in exemplary damages, plus interest. The judgment has not been satisfied either in whole or part.

Daesung notes that issues have been raised in this action concerning fraud, conspiracy, and theft of Acadian LLC assets by Bass and others. It asserts that Bass and others have conspired to loot Acadian LLC to avoid the Texas judgment. One overriding basis for intervention is that counsel for Acadian LLC in this action at the time of Daesung's intervention request, who has since been relieved of all representational duties and replaced by new counsel, also represents Bass' interests. Daesung asserts that it repeatedly requested that former counsel protect Acadian LLC assets from Bass and his Texas counsel, without any effect.

Respecting the requirements for intervention, Daesung asserts as follows:

> The interests of Daesung will be irreparably harmed if assets are allowed to be removed from Acadian improperly and Acadian claims an interest in the very property (the [Acadian] LLC membership shares) which is the subject of this litigation.
>
> In the event that the current parties to this litigation are allowed or otherwise manage to loot Acadian of its underlying assets, the interests of Daesung will be compromised.
>
> Daesung should also be permitted to intervene in order to protect its interests with respect to the challenge of ownership by James Ricky Carpenter.
>
> Given the conflict of interest and general inability of Acadian's present counsel to act, it is doubtful that [now relieved counsel] . . . will be able to effectively protect the company assets against the challenge by James Ricky Carpenter.
>
> None of the present parties can be counted on to protect the interests of Daesung, particularly since the [now relieved] counsel and leadership of Acadian are the very parties who are likely to be improperly removing corporate assets, or at least acquiescing to the same.
>
> [Now relieved] counsel for Acadian has taken no interest in protecting the company assets from internal plunder, and given the conflict of interest, it is not possible for Acadian's current counsel to adequately protect Daesung's interest.

(Mot. to Intevene ¶¶ 17-20). Daesung's reply brief continues with the same theme, namely, that "[n]otwithstanding Daesung's repeated requests for cooperation from [former counsel] . . . for Acadian, [former counsel] . . . has never assented to a single request for cooperation or indicated that Acadian was in a

position to protect Daesung's interest." (Reply at 3 (stating also "The issue is whether the judgment against Bass, who claims to be the sole shareholder in Acadian [LLC], provides Daesung sufficient interest in this matter to intervene. . . . Given that Bass is the sole shareholder of Acadian, the attempts by Bass in the past to avoid Daesung's valid judgment, and the fact that Counsel for Acadian also apparently represents Bass, it is clear that Daesung's interest may not be adequately represented in this matter and an adversity of interest exists between Daesung and Acadian.").

As noted, since the filing of the motion to intervene, new counsel has been retained to represent Acadian LLC. Further, on June 3, 2009, Bass filed a voluntary petition for Chapter 7 bankruptcy in his own name and "DBA Acadian . . . LLC . . . ." In re Bass, No. 09-11451-cag, doc. num. 1 (Bankr. W.D. Tx. Jun. 3, 2009). C. Daniel Roberts ("trustee") was appointed as trustee of the estate, with Kell C. Mercer, among others, representing the trustee. Additionally, both Acadian LLC and Bass have been named as third-party defendants in this action and different counsel represents each.

In filings submitted December 30, 2009, other considerations emerged.[1] Present counsel for Acadian LLC, Allen

---

[1] The filings are (1) a motion by present counsel for Acadian LLC for clarification or, in the alternative, for leave to

Guthrie & Thomas, PLLC ("Guthrie firm"), asserts that Bass, as Acadian LLC's sole member at the time, retained the firm to represent the entity on or about May 26, 2009.  Present counsel for Acadian LLC asserts that, prior to December 16, 2009, Bass directed the litigation on behalf of Acadian LLC.  On that date, however, counsel for Acadian received from Mercer a document entitled "Written Consent of the Sole Member in Lieu of Special Meeting [("Written Consent")]," which, unilaterally at the direction of the trustee, purports to replace Bass as the sole member of Acadian LLC and substitute the trustee in his stead.

Bass and his bankruptcy counsel have since informed the Guthrie firm "that they did not believe that the Chapter 7 Trustee had the authority to take the actions he purportedly had taken as reflected in the Written Consent."  (Mot. for Clarif. at 3; see also Ex. B, Mot. for Clarif. at 1 (noting the opposition of J. Howard Bass & Associates, Inc. ("Bass & Associates"), an Acadian LLC creditor, to the actions taken by the trustee).[2]

---

withdraw as counsel ("motion for clarification"), and (2) the trustee's motion to intervene in, and stay, this action ("trustee's motion").

[2]In Exhibit B to the motion for clarification, Bass and Associates quotes West Virginia Code section 31B-6-601(7), which provides as follows:

> A member is dissociated from a limited liability company upon the occurrence of any of the following events:
>
> . . . .

5

On December 23, 2009, the trustee filed an "Emergency Motion for Interim and Final Orders Enforcing the Automatic Stay and for Sanctions" ("Emergency Motion") in the Texas bankruptcy court.  The Emergency Motion notes the existence of an adversary proceeding styled <u>C. Daniel Roberts v. James H. Bass</u>, 09-1176-CAG, in which the trustee objects to discharge, seeks recovery of undisclosed and fraudulently transferred assets, and a determination of the "alter ego status of at least two entities it has alleged that Bass utilized to defraud his creditors." (Emerg. Mot. ¶ 6).

Additionally, the Emergency Motion asserts that (1) Bass' membership interest in Acadian LLC passed to the trustee upon institution of the Chapter 7 proceeding, (2) the trustee is now the sole member of Acadian LLC, (3) the trustee's desire to abate this action pending resolution of the adversary proceeding, and (4) the trustee's interest in the ownership, management, and control of Acadian LLC constitutes property of the estate subject to 11 U.S.C. § 362.  The Emergency Motion seeks the following relief:

> (1) that the Court enter an interim Order on an emergency basis enforcing the automatic stay against the Debtor and . . . [his counsel], precluding either

---

(7) The member's . . . (i) [b]ecoming a debtor in bankruptcy . . . .

<u>Id.</u> (describing as well that the trustee does not automatically become a member of Acadian LLC under West Virginia law).

> from interfering with the Trustee's management and
> control . . . over Acadian, (2) that the Court enter a
> final Order enforcing the automatic stay against the
> Debtor and . . . [his counsel], precluding either from
> interfering with the Trustee's management and control .
> . . over Acadian; (3) that the Court enter a final
> Order providing for the payment of damages and
> sanctions against . . . [debtor and his counsel] for
> willful violation of the automatic stay . . . .

(Emerg. Mot. at 6-7).

The trustee's motion filed yesterday herein asserts Bass answered falsely and in a misleading fashion respecting his assets during an examination by counsel for the trustee as part of the Chapter 7 proceeding. The trustee's motion further notes that he has moved the bankruptcy court in Texas to determine his right to control and direct Acadian LLC. The trustee's motion states further as follows:

> Upon intervention, the Trustee seeks to stay this
> lawsuit until final resolution of the Bass Bankruptcy
> Adversary. Pursuant to 28 U.S.C. § 1334(e), the
> Bankruptcy Court has exclusive jurisdiction over all
> property of the debtor and all property of the estate.
> Therefore, this lawsuit which involves, either directly
> or indirectly, claims regarding and involving property
> of the Debtor and/or property of the estate, should be
> stayed. Bankruptcy Code § 362(a)(3) stays any act to
> obtain possession or exercise control over property of
> the estate. This lawsuit involves the transfer of,
> ownership of, rights to, and control of property of the
> Debtor and/or the Debtor's bankruptcy estate. The
> Trustee recognizes that the automatic stay does not
> typically apply to non-debtors. However, in certain
> circumstances where a judgment in a matter could
> diminish an important asset of the bankruptcy estate,
> the matter is subject to a stay. <u>A.H. Robins Co., Inc.,</u>

v. Piccinin, 788 F.2d 994, 1001 (4th Cir. 1986) (citing In re Johns Manville Corp, 40 B.R. 219, 229 (S.D.N.Y. 1984). A judgment in this lawsuit could diminish various important asset(s) of the bankruptcy estate. Therefore, this Court should immediately stay this lawsuit pending final resolution of the Bass Bankruptcy Adversary.

(Trustee's Mot. ¶ 15).

## II.

Federal Rule of Civil Procedure 24(a) governs an entity's intervention of right into an existing civil action:

> (a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
>
> . . . .
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).[3]

One seeking intervention as of right must adequately demonstrate the existence of four separate requirements:

(1) the application must be timely; (2) the applicant

---

[3]The court does not understand Daesung to seek permissive intervention pursuant to Rule 24(b).

>    must have an interest in the subject matter sufficient
>    to merit intervention; (3) the denial of intervention
>    would impair or impede the applicant's ability to
>    protect its interest; and (4) the applicant's interest
>    is not adequately represented by the existing parties
>    to the litigation.

Scardelletti v. Debarr, 265 F.3d 195, 202 (4th Cir. 2001), rev'd on other grounds, Devlin v. Scardelletti, 536 U.S. 1 (2002) (citing Houston General Ins. Co. v. Moore, 193 F.3d 838, 839 (4th Cir. 1999)).

In United Guaranty Residential Ins. Co. of Iowa v. Philadelphia Savings Fund Society, 819 F.2d 473, 475 (4th Cir. 1987), our court of appeals cited Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972), for the proposition that "the application [for intervention] satisfies Rule 24(a)'s . . . [fourth] requirement if it is shown that representation of . . . [the movant's] interest 'may be' inadequate." United Guaranty, 819 F.2d at 475; In re Sierra Club, 945 F.2d 776, 779 (4th Cir. 1991) (same). It was further noted in United Guaranty that the burden imposed upon the movant is "'minimal.'" Id. at 475

The motion is timely. Further, Daesung holds a sizeable judgment against Bass, one who has essentially claimed "ownership" of Acadian LLC. It thus appears evident that Daesung satisfies the first two requirements of Rule 24(a)(2).

Regarding the last two requirements, the inquiry is more difficult. The court must examine if the denial of intervention would impair or impede Daesung's ability to protect its interests. While some guesswork is involved, those interests would appear to be (1) having Bass declared as the lawful "owner" of Acadian LLC, (2) halting the feared "loot[ing]" of Acadian LLC, (3) transferring of Bass' membership interest in Acadian LLC to movant, and (4) thereby providing a meaningful route for satisfaction of the Texas judgment. (See Mot. to Intervene ¶ 18 ("In the event that the current parties to this litigation are allowed or otherwise manage to loot Acadian [LLC] of its underlying assets, the interests of Daesung will be compromised.").

Daesung's participation in this litigation would only advance, potentially, the first two interests.[4] As to both, the central issue in this litigation is the "ownership" of Acadian LLC, as between defendant and third-party plaintiff James Ricky

---

[4]The transfer of Bass' membership interest in Acadian LLC is currently the subject of an apparently dormant miscellaneous action in this district. (See Mot. to Intervene ¶ 9) (citing Daesung Energy Resources, Inc. v. Bass, 2:09-mc-0048 (S.D. W. Va. Mar. 19, 2009). Satisfaction of the Texas judgment might also apparently be achieved through the same postjudgment mechanisms in place in the miscellaneous case.

Carpenter, third-party defendant Bass, or now perhaps the trustee.  If Carpenter prevails on the point, Daesung would appear to have little recourse.  If the trustee ultimately succeeds in asserting his nascent claim, Daesung's remedies will likely come, if at all, from the Texas bankruptcy court.  If Bass, through Acadian LLC, prevails on that issue, and the subject matter for some reason would not be covered by his Chapter 7 bankruptcy, Daesung might seek to satisfy the Texas judgment by transfer of Bass' ownership interest in Acadian LLC to Daesung, to the extent Bass has such remaining interest.

These efforts might just as well be the subject of other judicial proceedings elsewhere after the dust has settled on the "ownership" question, which has provoked quite a dust up.  The docket sheet reflects motion practice and discovery activity demonstrating that the "ownership" question is the subject of aggressive litigation by the existing parties and now, perhaps, the trustee.  Additionally, it is alleged by Carpenter that, on March 5, 2009, at a time preceding the motion to intervene, "Bass and other persons . . . [successfully] conspir[ed] to strip all of the assets of value out of Acadian [LLC] . . . and place them in the nominal ownership of other persons and/or entities under the control of . . . Bass and/or his co-conspirators, and beyond the reach of this court."  (Thrd. Pty. Compl. ¶ 11-12).

11

Indeed, the third-party complaint, again the subject of very aggressive litigation, seeks an accounting, disgorgement of all assets putatively looted from Acadian LLC, and "[f]orfeiture of Third Party Defendant's interests, if any, in" Acadian LLC. (Id. ¶¶ 5-7). One would expect Daesung to seek this precise type of relief were it a party herein. That is a matter of some consequence in the Rule 24(a)(2) calculus. See Commonwealth of Virginia v. Westinghouse Elec. Corp., 542 F.2d 214, 216 (4th Cir. 1976) (noting that "[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance.")

Interestingly, Daesung's reply brief also notes that it was counsel for Carpenter who apparently first contacted Daesung's counsel to alert him to documents suggesting that "Bass was looting assets from Acadian . . . ." (Reply at 2). Further, the linchpin supporting intervention, namely, the putative conflict of interest resulting from the joint representation of Bass and Acadian LLC, has now largely abated in light of both entities now having separate counsel.

Based upon the foregoing discussion, the court concludes that Daesung has not at this juncture made the minimal showing required of it for intervention as of right pursuant to Rule 24(a)(2). The court, accordingly, ORDERS that Daesung's motion to intervene as a plaintiff be, and it hereby is, denied without prejudice. Daesung is given leave to renew its intervention request at such time, if ever, that it is able to demonstrate that the denial of intervention would impair or impede its ability to protect its interests or that its interests are inadequately represented by the existing parties to the litigation or those subsequently permitted to intervene.[5]

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED: December 31, 2009

_____
John T. Copenhaver, Jr.
United States District Judge

---

[5] At the time of filing the motion to intervene as a plaintiff, Daesung requested oral argument. Having considered the request, the court dispenses with oral argument inasmuch as the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

13