```
                 UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF WEST VIRGINIA
                     CHARLESTON DIVISION


ACADIAN ENERGY RESOURCES, LLC and
J. HOWARD BASS & ASSOCIATES, INC.,

          Plaintiffs,


v.                                   CIVIL ACTION NO. 2:09-00150

JAMES R. CARPENTER and
SUNSHINE PROPERTY INVESTMENTS, LLC, and
WILLIAM POLAN and
ROBERT SHANE POLAN,

          Defendants.


and


JAMES R. CARPENTER,

          Third-Party Plaintiff,


v.


JAMES H. BASS
J. HOWARD BASS & ASSOCIATES, INC.,
a Texas corporation, and RICHARD CHEATHAM and
TSAR-WV, LLC,
a Delaware limited liability company,
ACADIAN ENERGY RESOURCES, LLC,
a West Virginia limited liability company,
ACADIAN ENERGY RESOURCES, INC.
a Delaware corporation, and
JOHN AND JANE DOES 1-99,

          Third-Party Defendants.
```

## MEMORANDUM OPINION AND ORDER

Pending is the third-party defendants', TSAR-WV, LLC ("TSAR") and Richard Cheatham, motions to dismiss the third-party complaint and to exceed the page limitation for their supporting memorandum of law, filed June 22, 2009.

The court ORDERS that the motion to exceed the page limitation be, and it hereby is, granted.

I.

Third-party plaintiff James R. Carpenter is an Ohio resident. Third-party defendants are James H. Bass, J. Howard Bass & Associates, Inc. ("Bass & Associates"), who are both Texas residents, Acadian Energy Resources, Inc. ("Acadian Inc."), which is a Delaware corporation with its principal place of business in West Virginia, TSAR, which is a Delaware limited liability company transacting business in West Virginia, Richard Cheatham, who is a Texas resident, a member of TSAR, and a manager of Acadian Energy Resources, LLC ("Acadian LLC"), and Acadian LLC, which is a West Virginia resident.

On April 27, 2009, Carpenter instituted this third-party action. Count One alleges a violation of the Uniform

2

Fraudulent Transfers Act ("UFTA"), West Virginia Code §§ 40-1A-1 et seq. Count One contains the bulk of the factual allegations found in the third-party complaint, which are then incorporated by reference into the remaining Counts, at times with and without further elaboration.

The allegations reflect that on February 20, 2009, the court entered a temporary restraining order ("TRO") directing the defendants in the principal action, inter alia, to vacate the premises of certain real property in Fayette County ("the property"), the ownership of which is at the center of this controversy. On February 23, 2009, the court entered a succeeding memorandum opinion and order reflecting Carpenter's agreement to the entry of a preliminary injunction on the same terms as outlined in the TRO.

After entry of the TRO, Bass reentered the property in order to conduct the business of Acadian LLC. According to Carpenter, "the terms of the Preliminary Injunction were pragmatically intended to protect the interests of all sides in this litigation . . . ." (Third Pty. Compl. ¶ 10). Carpenter alleges that immediately following entry of the TRO and preliminary injunction, however, Bass and other unnamed individuals conspired to strip all or substantially all of the

valuable assets from Acadian LLC and place them under the nominal
ownership of other individuals and entities under the control of
Bass or his co-conspirators.

Specifically, on March 5, 2009, Bass, Acadian LLC,
Acadian Inc., and Bass & Associates, sold to TSAR, as part of a
Purchase and Sale Contract attached as Exhibit A to the third-
party complaint, all or virtually all of the valuable assets of
Acadian LLC.  Carpenter alleges that TSAR is controlled by
Cheatham.  The sale encompassed "many dozens of mineral leases
covering many thousands of acres of lands, and worth many
millions of dollars." (Id. ¶ 12).  Carpenter additionally asserts
that the third-party defendants have engaged in other,
unspecified fraudulent transactions that removed assets from
Acadian LLC without returned value and "for the express purpose
of defeating the claims of creditors . . . ."  (Id. ¶ 13).

Carpenter alleges that Acadian LLC is a "debtor" as to
Carpenter.  While he alleges that Cheatham is a member of both
the purchasing and selling limited liability companies, he does
not specifically allege that either Cheatham or TSAR also qualify
as debtors as to him.  Located between Counts Six and Eight,
however, is a "VII" without the word "Count" preceding it.  Under
the "VII" is found the phrase "PIERCING OF CORPORATE VEILS."

4

Carpenter disavows any intention to plead a freestanding claim
for piercing the corporate veil. (See Resp. to Mot. to Dism. at
15 n.12). Instead, he asserts under the "VII" that the corporate
veil should be disregarded concerning all transactions involving
Bass, Cheatham, and, at a minimum, the corporate or commercial
third-party defendants. Carpenter alleges the 19 factors
relevant to the veil-piercing analysis, as set forth in Layla v.
Erin Homes, Inc., 177 W. Va. 343, 347-48, 352 S.E.2d at 98-99
(1986), asserting those elements support the conclusion that the
corporate and commercial third-party defendants are alter egos of
Bass and Cheatham.[1]

Carpenter additionally contends in Count One that
"[a]ll, or virtually all, of the criteria for determining intent
to defraud" under the UFTA are present in this action. (Id. ¶
16). He alleges specifically that (1) the purchaser did not
transfer reasonably equivalent value for the assets received, (2)

_____

[1]For example, it is alleged as follows:

TSAR . . . purportedly owned and managed by . . .
Cheatham, who is also a manager of Acadian . . . LLC,
cannot plausibly assert that, within mere days of this
Court's entry of a preliminary injunction, . . .
Cheatham did not know full well that his actions were
intended to defeat the claims of creditors and this
Court's jurisdiction.

(Id. ¶ 52).

5

"the debtor" was left post-transfer with assets unreasonably small in relation to its business, and (3) the purchaser knew Carpenter and others had claims against "the debtor . . . ." (<u>Id.</u> ¶ 17). The balance of Count One requests relief for the misconduct alleged.

Count Two is a fraud claim that merely incorporates the allegations preceding it. It conclusorily states that the "transactions described in the foregoing paragraphs constitute[] common law fraud. <u>Davis v. Celotex Corp.</u>, 187 W. Va. 566 (W. Va. 1992)." (<u>Id.</u> ¶¶ 20-21). Count Three is for civil conspiracy and likewise incorporates all preceding allegations. Similar to Count Two, its only substantive allegation states that the third-party defendants' "entry into the agreement to effectuate the transactions . . . constituted a conspiracy to defraud" Carpenter and others unnamed, citing <u>Kessell v. Leavitt</u>, 204 W. Va. 95, 511 S.E.2d 720 (1998).

Count Four is a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 <u>et seq.</u>, for a "'PATTERN AND PRACTICE OF RACKETEERING'". (<u>Id.</u> at 25). After alleging that all individuals named in the third-party complaint qualify as "person[s]" for RICO purposes, Carpenter alleges the third-party defendants formed an

6

association-in-fact to defraud Acadian LLC.[2]  He further contends

that the association qualifies as a RICO "enterprise" engaged in

and affecting interstate and foreign commerce.[3]  Specifically, he

asserts that the third-party defendants directly or indirectly

conducted, or participated in, the enterprise's affairs through a

"pattern of racketeering activity"

> by engaging in the acts set forth above, inducing by
> fraud the services of . . . Carpenter, and fraudulently
> transferring the assets of Acadian . . . LLC to defeat
> creditors.  The acts set forth above constitute a
> violation of one or more of the following statutes: 18
> U.S.C. § 1341 (mail fraud), and 18 U.S.C. § 1343 (wire
> fraud).

(Id. ¶ 30).[4]  The remainder of Count Four essentially consists of

boilerplate allegations reciting some of the statutory

prerequisites for the RICO claim.

---------------------------

[2]RICO defines a "person" as including "any individual or
entity capable of holding a legal or beneficial interest in
property."  18 U.S.C. § 1961(3).

[3]An "enterprise" under RICO "includes any individual,
partnership, corporation, association, or other legal entity, and
any union or group of individuals associated in fact although not
a legal entity."  18 U.S.C. § 1961(4).

[4]Pursuant to 18 U.S.C. § 1961(1), "racketeering activity"
includes any unlawful act for which an indictment might be
returned under a number of enumerated provisions of the criminal
code, including 18 U.S.C. §§ 1341 (relating to mail fraud) and
1343 (relating to wire fraud). A "pattern of racketeering
activity" must consist of "at least two acts of racketeering
activity, one of which occurred after the effective date of" RICO
and "the last of which occurred within ten years (excluding any
period of imprisonment) after the commission of a prior act of
racketeering activity."  18 U.S.C. § 1961(5).

7

Count Five alleges a RICO conspiracy.  This Count also consists entirely of an incorporation by reference of allegations that preceded it and boilerplate allegations designed to simply set forth the legal requirements of a RICO conspiracy claim.

Count Six alleges a claim for criminal assignment and receipt of assets to defeat creditors.  Carpenter alleges that the third-party defendants and their unnamed conspirators' actions in assigning Acadian LLC property with the intent to defraud creditors was in violation of a state criminal statute, namely, West Virginia Code section 61-3-24, inasmuch as they "secrete[d], assign[ed] or convey[ed], or otherwise dispose[d] of . . . property with the intent to defraud . . . [a] creditor or to prevent the property from being made liable for payment of debts" and "receive[d] . . . property . . . with the intent to defraud any creditor or to prevent the property from being made liable for the payment of debts."  (Thrd. Pty. Compl. ¶¶ 42-43 (quoting W. Va. Code § 61-3-24(c)(2) and (3)).  Carpenter recites that criminal code violations in West Virginia are actionable under West Virginia Code section 55-7-9.[5]  In addition to

_____

[5]The referenced statute provides as follows:

    Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty
(continued...)

incorporating by reference the allegations preceding Count Six, Carpenter alleges in this Count that he holds "a judgment against . . . Bass, who has assigned assets with the intent to defraud creditors . . . ."  (Id. ¶ 45).

Count Eight alleges a claim for breach of fiduciary duty.  In sum, Carpenter alleges that Cheatham engaged in fraudulent transactions to defeat the lawful interests of Acadian LLC's creditors.  He asserts that Cheatham's breach was made with full knowledge of its illegality and for the express purpose of unlawfully enriching Cheatham at the expense of creditors with claims against Acadian LLC and Bass.

Count Nine alleges a claim for breach of the corporate opportunity doctrine.  After once again incorporating the many preceding allegations of the third-party complaint, Carpenter alleges that Bass, Cheatham, and others unknown created Acadian Inc., in 2008 to divert to it opportunities that should have first been presented to Acadian LLC, in violation of the duty of loyalty owed to Acadian LLC.

---

[5](...continued)
or forfeiture for such violation be thereby imposed,
unless the same be expressly mentioned to be in lieu of
such damages.

W. Va. Code § 55-7-9.

9

II.

A.   Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 127 S. Ct. at 1969)); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007).  Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ."  Twombly, 127 S. Ct. at 1965.  It is now settled that "a formulaic recitation of the elements of a cause of action will not do."  Id.; Giarratano v. Johnson, 521 F.3d 298, 304 (4th Cir. 2008).

10

The complaint need not, however, "make a case" against a defendant or even "forecast evidence sufficient to prove an element" of the claim.  Chao v. Rivendell Woods, Inc., 415 F.3d 342, 349 (4th Cir. 2005) (quoting Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002)).  Instead, the opening pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level."  Twombly, 127 S. Ct. at 1965; Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)(noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  Stated another way, the complaint must allege "enough facts to state a claim to relief that is plausible on its face."  Id. at 1974; Giarratano, 521 F.3d at 302.  The recent decision in Iqbal provides some guidance concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . .
>
> Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

11

> complaint has alleged -- but it has not "show[n]" --
> "that the pleader is entitled to relief."
>
>      In keeping with these principles a court
> considering a motion to dismiss can choose to begin by
> identifying pleadings that, because they are no more
> than conclusions, are not entitled to the assumption of
> truth.  While legal conclusions can provide the
> framework of a complaint, they must be supported by
> factual allegations.  When there are well-pleaded
> factual allegations, a court should assume their
> veracity and then determine whether they plausibly give
> rise to an entitlement to relief.

Iqbal, 129 S. Ct. at 1949-50 (citations omitted).

     As noted in Iqbal, the Supreme Court has consistently

interpreted the Rule 12(b)(6) standard to require a district

court to "'accept as true all of the factual allegations

contained in the complaint . . . .'" Erickson, 127 S. Ct. at

2200 (quoting Twombly, 127 S. Ct. at 1965); see also South

Carolina Dept. of Health and Environmental Control v. Commerce

and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting

Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)).  The court is

additionally required to "draw[] all reasonable . . . inferences

from those facts in the plaintiff's favor . . . ." Edwards v.

City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

     Our court of appeals in recent weeks has both

reiterated the foregoing standards and noted additionally as

follows:

> Even though the requirements for pleading a proper
> complaint are substantially aimed at assuring that the
> defendant be given adequate notice of the nature of a
> claim being made against him, they also provide
> criteria for defining issues for trial and for early
> disposition of inappropriate complaints.

Francis v. Giacomelli, No. 08-1908, 2009 WL 4348830, at *4 (4th

Cir. Dec. 2, 2009); see also Nemet Chevrolet, Ltd. v.

Consumeraffairs.Com, Inc., No. 08-2097, --- F.3d ----, 2009 WL

5126224, at *3 (4th Cir. Dec. 29, 2009) ("But we also conclude

from the analysis in Iqbal that legal conclusions, elements of a

cause of action, and bare assertions devoid of further factual

enhancement fail to constitute well-pled facts for Rule 12(b)(6)

purposes.").


B.   Count One


     Movants assert that Carpenter fails to allege that they

are "debtors" under the UFTA or plead the alleged fraudulent

transfers with the requisite particularity against the multiple

third-party defendants, as required by Rule 9(b).

     Respecting the first contention, Carpenter alleges that

Acadian LLC is his "debtor."  This allegation, taken together

with the additional allegations supporting the veil-piercing

request under section VII of the third-party complaint, minimally

suffice at this stage for purposes of disregarding the various

corporate forms and treating all transfers and transactions

involving Bass, Cheatham, and the corporate or commercial third-party defendants as being perpetrated by all as alter egos of one another for purposes of the alleged missing "debtor" allegation.[6]

Respecting the lack of particularity required by Rule 9(b), Cheatham and TSAR concede that a fraud pleading is adequate if it identifies "the transfer alleged to be fraudulent, the reasons that the transfer was fraudulent, and the role of the defendant in connection with the transfer." (Defs.' Memo. in Supp. at 9). Carpenter identifies March 5, 2009, as at least one fraudulent transaction. (Thrd. Pty. Compl. ¶¶ 12-13). Regarding the reasons that the transfer was fraudulent and the third-party defendants' roles, Carpenter alleges that the March 5, 2009, transaction was "entered into for the express purpose of defeating . . . claims" that he had against the third-party defendants. The particularity requirement is thus satisfied. The court, accordingly, concludes that Count One withstands scrutiny under Rule 12(b)(6).

---

[6]Cheatham and TSAR also assert that it is improper under Rule 9(b) to "lump[] together" all of the third-party defendants for purposes of pleading fraud claims. The court deems the veil-piercing allegations to overcome this defense as well.

14

B.   Count Eight[7]


        Cheatham and TSAR next assert that Count Eight is
subject to dismissal inasmuch as it does not allege a fiduciary
relationship between Cheatham and Carpenter.  The contention
relies upon the asserted fact that "Cheatham was not the manager
of Acadian . . . LLC . . . during the relevant time period." (See
Memo. in Supp. at 28).  Additionally, relying upon a single
decision from Delaware, Cheatham and TSAR contend that the law
does not recognize an actionable fiduciary relationship between
creditors and corporate directors.

        Regarding the first contention, Cheatham previously

---

        [7]The court declines at this time to reach movants' request
to dismiss Count Six.  The ground for dismissal is that there is
no basis for the alleged private civil claim based upon West
Virginia Code section 61-3-24, which criminalizes the assignment
and receipt of assets to defeat creditors.  Carpenter contends
that the criminal code violations are actionable privately under
West Virginia Code section 55-7-9.  A multifactor test, with
significant public policy implications, governs the
determination.  See, e.g., Syl. Pt. 3, Hill v. Stowers, --- W.
Va. ---, ---, 680 S.E.2d 66, 68 (2009); Syl. Pt. 1, Hurley v.
Allied Chemical Corp., 164 W. Va. 268, 268, 262 S.E.2d 757, 758
(1980).  In view of the limited analysis of this issue by the
parties, the court declines to address the request at this time.
Movants may renew their challenge to Count Six at the summary
judgment stage of the case.
        Respecting Count Nine, for the reasons stated in Carpenter's
response brief at pages 35 through 36, the court at this juncture
deems the third-party complaint to adequately allege, in
accordance with generally applicable law, a claim for breach of
the corporate opportunity doctrine.

asserted by affidavit submitted February 19, 2009, that he was

"the sole manager of Acadian . . . LLC . . . ."  (Aff. of Richard

Cheatham ¶ 2).  Carpenter contends in his response brief that the

records of the West Virginia Secretary of State reflect that

Cheatham is still engaged in that capacity.  Cheatham further

asserted as follows in the aforementioned affidavit:

> I am fully apprised of the institution of this lawsuit,
> of James Bass' involvement in the institution of this
> lawsuit and its prosecution and, as manager of Acadian
> . . . LLC, hereby ratify and state that all such
> actions are authorized on behalf of Acadian . . . LLC.

(Id. ¶ 6).

As to the applicable law governing the imposition of a

fiduciary duty upon Cheatham vis-a-vis Carpenter, it appears as

follows:

> [t]he law by the great weight of authority seems to be
> . . . that when a corporation becomes insolvent, or in
> a failing condition, the officers and directors no
> longer represent the stockholders, but by the fact of
> insolvency, become trustees for the creditors, and that
> they cannot by transfer of its property or payment of
> cash, prefer themselves or other creditors . . . .

Federal Deposit Ins. Corp. v. Sea Pines Co., 692 F.2d 973, 977

(4th Cir. 1982) (citing Davis v. Woolf, 147 F.2d 629, 633 (4th

Cir. 1945), and Alexander v. Hillman, 296 U.S. 222 (1935)).

Bankruptcy Judge Patrick M. Flatley recently observed as much

respecting the law of West Virginia, under which Acadian LLC was

16

apparently formed.  In re Burton, 416 B.R. 539, 547 (Bkrtcy. N.D.
W. Va. 2009) ("To protect creditors of an insolvent corporation,
the Supreme Court of Appeals of West Virginia has stated that --
when a corporation becomes insolvent -- the fiduciary duties of
the officers [and] directors shifts from the stockholders to the
creditors . . . .") (citing, inter alia, Syl. Pt. 4, Arnold v.
Knapp, 75 W. Va. 804, 84 S.E. 895, 899 (1915), and Little
Switzerland Brewing Co. v. Oxley, 156 W. Va. 800, 197 S.E.2d 301,
306 (1973)).

        Regarding the financial strength of Acadian LLC that
might warrant imposition upon Cheatham of a fiduciary duty to
Acadian LLC creditors, Carpenter alleges that, at a time
preceding filing of the third-party complaint, but following the
institution of this civil action, the entity was looted of its
valuable assets.  It is also a matter of record, as reflected in
the June 3, 2009, voluntary petition for bankruptcy filed by Bass
in the Western District of Texas, that his filing was made in his
own name and "DBA Acadian . . . LLC . . . ."  In re Bass, No. 09-
11451-cag, doc. num. 1 (Bankr. W.D. Tx. Jun. 3, 2009).[8]  While

_____

        [8]In a memorandum supporting a motion to intervene and
transfer filed herein by the trustee in the Texas bankruptcy
proceeding on December 30, 2009, it is asserted as follows:

        On April 27, 2009, Carpenter filed his Answer,
        Counterclaim, and Third-Party Claim and asserted the
                                        (continued...)

this additional detail should have appeared in the third-party

complaint, Carpenter alleges in Count Eight that Cheatham

---

[8](...continued)
following causes of action against the Debtor, Acadian,
Acadian Inc., Bass & Associates, Richard Cheatham, and
Tsar-WV, LLC: (1) fraudulent transfer; (2) fraud; (3)
civil conspiracy; (4) claims under the Racketeer
Influenced and Corrupt Organizations Act; (5) criminal
assignment and receipt of assets to defeat creditors;
(6) piercing of corporate veils; (7) breach of
fiduciary duty; and (8) breach of corporate opportunity
doctrine. These claims are very similar to, if not
identical to, the claims asserted by the Trustee
against the same parties in the Bass Bankruptcy
Adversary. The fraudulent transfer cause of actions
against the Debtor and Acadian are property of the
Debtor's bankruptcy estate and must be resolved through
the Bass Bankruptcy Adversary.

. . . .

The Bankruptcy Court has exclusive jurisdiction
over most if not all of the claims in this lawsuit
because they involve, directly or indirectly, property
of the Debtor and/or the Debtor's estate and the
transfer of, ownership of, rights to, and control of
property of the Debtor and/or the Debtor's bankruptcy
estate. . . . The Bankruptcy Court has exclusive
jurisdiction over the bankruptcy estate assets that the
Trustee asserts were fraudulently transferred. The
Bankruptcy Court also has exclusive jurisdiction over
the alter-ego claims and the determination regarding
whether the Trustee may assert control over Acadian.

As a result of the Bankruptcy Court's exclusive
jurisdiction over these claims, and pursuant to
Bankruptcy Code § 362, this Court must stay this
lawsuit until final resolution of the Bass Bankruptcy
Adversary.

(Memo. in Supp. of Mot. to Int. and Stay at 10, 13-14).  The
court does not deem the trustee's recent filing, at least prior
to its full briefing and consideration, to affect the viability
of the third party complaint or the instant 12(b)(6) motion.

"engaged in fraudulent transactions to defeat the lawful interest of creditors of Acadian LLC" and that "Cheatham's breach of fiduciary duty was made with full knowledge of its illegality for the express purpose of unlawfully enriching" himself "at the expense of creditors with lawful claims against" Acadian LLC. (Thrd. Pty. Compl. ¶¶ 56-57).  Again, those allegations minimally suffice for purposes of <u>Twombly</u> and its progeny.  The court concludes that Count Eight withstands scrutiny under Rule 12(b)(6).

C.   Counts Two Through Five

Cheatham and TSAR challenge Count Two on the grounds that it fails to state a claim or to plead the requisite elements with particularity.  Count Two consists of two sentences, one that simply incorporates all antecedent allegations and another that cites a West Virginia case and characterizes "[t]he transactions . . . in the foregoing paragraphs" as "common law fraud."  (Thrd. Pty. Compl. ¶¶ 20-21).  The same is essentially true of Count Three, which consists of two sentences, one of an incorporative nature and the other with a legal conclusion regarding "the transactions" at issue, accompanied by a citation to a single West Virginia case.

19

A defending party might possibly be able to assemble the relevant and material allegations preceding Counts Two and Three, compare them to the legal elements of each of the two claims alleged, and then make some speculative judgment concerning Carpenter's intentions. The law, however, does not require, or approve of, that approach. Following _Twombly_, a pleader must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" _Twombly_, 127 S. Ct. at 1964 (quoted authority omitted). Further, the "entitlement to relief" to which Rule 8(a)(2) refers is "more than labels and conclusions . . . ." _Id._ at 1965. There must be "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." _Id._ at 1965.

At present, the court concludes that both Counts Two and Three lack "enough facts to state a claim to relief that is plausible on its face." _Id._ at 1974. Beyond this defect, however, the Counts additionally provide inadequate notice of the nature of the claims and do little to assist in defining issues for trial. This is especially true of Count Two, which is subject to the particularity requirement imposed by Rule 9(b).

The RICO claims alleged in Counts Four and Five present similar concerns.  In Count Four, as noted, Carpenter alleges that the third-party defendants directly or indirectly conducted or participated in the named enterprise's affairs through a "pattern of racketeering activity"

> by engaging in the acts set forth above, inducing by fraud the services of . . . Carpenter, and fraudulently transferring the assets of Acadian . . . LLC to defeat creditors.  The acts set forth above constitute a violation of one or more of the following statutes: 18 U.S.C. § 1341 (mail fraud), and 18 U.S.C. § 1343 (wire fraud).

(Id. ¶ 30).  The remainder of Count Four essentially consists of boilerplate allegations reciting some of the statutory prerequisites for the RICO claim.  Count Five consists essentially of a single incorporative paragraph and five additional boilerplate allegations.

The RICO statute, though commonly associated with offenses of a criminal nature, also allows for the imposition of civil liability upon those who engage in a "pattern of racketeering activity."  GE Investment Private Placement Partners II v. Parker, 247 F.3d 543, 548 (4th Cir. 2001).  As noted by the court of appeals in Parker, "[a] 'pattern of racketeering activity' requires 'at least two acts of racketeering activity.'" Id. (quoting 18 U.S.C. § 1961(5)).  While at least two predicate

21

acts are required, they do not alone establish the requisite

pattern.  Sedima v. Imrex Co., Inc., 473 U.S. 479, 496 n. 14, 497

(1985).  Rather, plaintiff must demonstrate that the predicate

acts are related and that they "'amount to or pose a threat of

continued criminal activity.'"  Id.  (quoting H.J. Inc. v.

Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989)).

          In expounding upon the continuity requirement, the

court of appeals observed as follows in Parker:

> Continuity refers "either to a closed period of
> repeated conduct, or to past conduct that by its nature
> projects into the future with a threat of repetition."
> Closed-ended continuity may be established by a "series
> of related predicates extending over a substantial
> period of time." "Predicate acts extending over a few
> weeks or months and threatening no future criminal
> conduct do not satisfy this requirement."  Open-ended
> continuity may be established where, for example, the
> "related predicates themselves involve a distinct
> threat of long-term racketeering activity," or where
> the predicate acts "are part of an ongoing entity's
> regular way of doing business . . . or of conducting or
> participating in an ongoing and legitimate RICO
> enterprise."  We are "cautious about basing a RICO
> claim on predicate acts of mail and wire fraud because
> it will be the unusual fraud that does not enlist the
> mails and wires in its service at least twice."  RICO
> liability is reserved for "ongoing unlawful activities
> whose scope and persistence pose a special threat to
> social well-being."

Id. at 549 ("Where the fraudulent conduct is part of the sale of

a single enterprise, the fraud has a built-in ending point, and

the case does not present the necessary threat of long-term,

continued criminal activity.") (citations omitted); <u>H.J. Inc.</u>,
492 U.S. at 242 ("'Predicate acts extending over a few weeks or
months and threatening no future criminal conduct do not satisfy
this requirement: Congress was concerned in RICO with long-term
criminal conduct.'"); <u>ePlus Technology, Inc. v. Aboud</u>, 313 F.3d
166, 182 (4th Cir. 2002) ("Thus, it is clear that predicate acts
of racketeering activity must be part of a prolonged criminal
endeavor."); <u>United States v. Pizzonia</u>, 577 F.3d 455, 465 (2nd
Cir. 2009)("RICO's pattern element . . . serves to ensure that a
defendant's criminal participation in an enterprise is not merely
isolated or sporadic, but indicative of the sort of continuity of
criminal activity -- or the threat of continuity -- that is the
hallmark of racketeering.").

        Noteworthy as well is the concluding paragraph of
<u>Parker</u>, which observed as follows concerning the practical reach
of the RICO statute into areas long reserved for routine fraud-
type claims:

> As we have repeatedly noted . . . RICO treatment is
> reserved for conduct "whose scope and persistence pose
> a special threat to social well-being."  After
> considering all of the allegations in Plaintiffs'
> complaint, we are satisfied that Defendants' conduct
> does not fall "sufficiently outside the heartland of
> fraud cases to warrant RICO treatment."  We thus
> conclude that the district court did not err in
> dismissing Plaintiffs' RICO claims under Rule 12(b)(6)
> . . . .

<u>Id.</u> at 551 (citations omitted).

Carpenter acknowledges the continuity requirement.  His strongest argument in service of it relies upon the reference, in his response brief, to Exhibit A to the third-party complaint. He contends that Exhibit A is "the March 5, 2009, transactional document that constituted the fraudulent looting of" Acadian LLC. The difficulty with this further attempt at incorporation is that the complex and reticulate document spans over 100 pages.  Again, one skilled in civil RICO jurisprudence, with the benefit of full discovery, might well be able to espouse some potential theory concerning the continuity requirement.  That potentiality, however, does not satisfy the plausibility requirement or the necessity of providing adequate notice to a responsive pleader.[9] At most, Carpenter has pled in Counts Four and Five garden-

---

[9]In addition to citing other facts not pled, Carpenter asserts reliance upon not only upon the March 5, 2009, transaction as satisfying the continuity requirement but also his incorporation by reference of paragraph 13 of the third-party complaint.  That allegation states as follows:

> Carpenter states that he believes he will likely have evidentiary support, after a reasonable opportunity for further investigation or discovery, for the assertion, and therefore now asserts, that Third Party Defendants have engaged in other fraudulent transactions removing assets from Acadian Energy Resources, LLC while not receiving value in return, and for the express purpose of defeating the claims of creditors of Third Party Defendants.

(Thrd. Pty. Compl. ¶ 13).  The court does not deem any unpled allegations or this conditional and general allegation to lend any support to the viability of Counts Four and Five.

variety state law fraud claims, albeit without the particularity required by Rule 9(b).

It is, accordingly, ORDERED that Counts Two, Three, Four, and Five be, and they hereby are, dismissed without prejudice.  If he so desires, Carpenter is given leave to file an amended third-party complaint no later than January 22, 2010, which encompasses the claims that have withstood dismissal and revised allegations addressing the fatal omissions in Counts Two, Three, Four, and Five.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATED:  December 31, 2009

John T. Copenhaver, Jr.
United States District Judge