UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION


ACADIAN ENERGY RESOURCES, LLC and
J. HOWARD BASS & ASSOCIATES, INC.,

      Plaintiffs,

v.                          CIVIL ACTION NO. 2:09-00150

JAMES R. CARPENTER and
SUNSHINE PROPERTY INVESTMENTS, LLC, and
WILLIAM POLAN and
ROBERT SHANE POLAN,

      Defendants.


and


JAMES R. CARPENTER,

      Third-Party Plaintiff,

v.

JAMES H. BASS
J. HOWARD BASS & ASSOCIATES, INC.,
a Texas corporation, and RICHARD CHEATHAM and
TSAR-WV, LLC,
a Delaware limited liability company,
ACADIAN ENERGY RESOURCES, LLC,
a West Virginia limited liability company,
ACADIAN ENERGY RESOURCES, INC.
a Delaware corporation, and
JOHN AND JANE DOES 1-99,

      Third-Party Defendants.

## MEMORANDUM OPINION AND ORDER

Pending are motions filed December 30, 2009, (1) by counsel representing Acadian Energy Resources, LLC ("Acadian LLC"), for clarification or, in the alternative, for leave to withdraw ("motion for clarification"), and (2) by bankruptcy trustee and interested party C. Daniel Roberts to intervene herein and to stay proceedings ("motion to intervene and stay").

I.

Plaintiff Acadian LLC is a West Virginia citizen. J. Howard Bass & Associates, Inc. ("Bass & Associates"), is a Texas citizen. James H. Bass is a Texas citizen who served as chairman of Bass & Associates at all relevant times. Defendant Sunshine Property Investments, LLC ("Sunshine"), is a West Virginia citizen. William Polan and Robert Shane Polan are West Virginia citizens and members of Sunshine. Defendant and third-party plaintiff James R. Carpenter is an Ohio citizen. As discussed more fully infra, the third-party defendants appear to be (1) Acadian LLC, (2) Bass, (3) Bass & Associates, (4) Acadian Energy Resources, Inc. ("Acadian Inc."), a Delaware corporation with its principal place of business in West Virginia, (5) TSAR-WV, LLC ("TSAR"), a Delaware limited liability company transacting business in West Virginia, and (6) Texas citizen

2

Richard Cheatham, who is a member of TSAR, and formerly a manager of Acadian LLC.

On February 18, 2009, Acadian LLC and Bass & Associates instituted this action ("the principal action") with a verified complaint.  Acadian LLC is engaged, <u>inter alia</u>, in the oil and gas leasing business.  At the time the principal action was instituted, Acadian LLC operated out of a complex it ostensibly owned at 168 Woodcrest, Fayetteville ("the property").

The verified complaint alleges that on May 16, 2008, Carpenter, who plaintiffs assert was a manager of Acadian LLC, left its employ.  Plaintiffs further allege that on August 15, 2008, Carpenter fraudulently, and without authority, authored and executed a deed of trust on behalf of Acadian LLC as the borrower of $450,000.  Carpenter listed himself as the lender and trustee.  The deed of trust secured a note due and payable on December 31, 2008.

Plaintiffs assert that Acadian LLC never received the proceeds of the loan.  The member and other manager of Acadian LLC, Bass and Cheatham respectively, assert that they also lacked any knowledge of the transaction by Carpenter.  Acadian LLC further asserts that between December 2008 and February 2009 (1) Carpenter sold to Sunshine or the Polans the note secured by the

deed of trust, and (2) Sunshine or the Polans later foreclosed on the note.  Carpenter also appears to have later conveyed the property to Sunshine as well.  Plaintiffs assert that they received no notice of the foreclosure or apparently any other transactions related to it.

On February 15, 2009, Carpenter advised an Acadian LLC representative that the property had been sold.  On February 16, 2009, the Polans arrived at the property, intending to take possession of it.  Acadian LLC asserted that it was unable to meaningfully conduct any business without access to the property and that corporate records and trade secrets were accessible by those with keys to the office.  It asserted that if it was ousted from the property that it would "be destroyed by the appearance that it ha[d] abandoned . . . [its] affiliates and prospects without warning."  (Compl. ¶ 24).

The verified complaint includes the following counts: (1) fraud, conversion, embezzlement, and larceny (Count One), (2) civil conspiracy (Count Two), (3) slander of title (Count Three), and (4) conversion (Count Four).  Plaintiffs seek, inter alia, compensatory and punitive damages and permanent injunctive relief.  They additionally requested a temporary restraining order and, later, a preliminary injunction.

4

On February 20, 2009, the court entered a temporary
restraining order ("TRO") directing the defendants in the
principal action, inter alia, to vacate the property.  After
entry of the TRO, Bass reentered the property in order to conduct
the business of Acadian LLC.  On February 23, 2009, the court
entered a preliminary injunction on the same terms as outlined in
the TRO.

According to Carpenter, "the terms of the Preliminary
Injunction were pragmatically intended to protect the interests
of all sides in this litigation . . . ." (Third Pty. Compl. ¶
10).  On April 27, 2009, however, Carpenter instituted a third-
party action ("third-party action"), naming Bass, Bass &
Associates, Cheatham, TSAR, Acadian LLC and Acadian Inc.[1]

---

[1]After the court granted in part Cheatham and TSAR's motion
to dismiss the third-party action, Carpenter filed an amended
third-party complaint on January 22, 2010.  In the style of the
pleading, and under the heading "PARTIES," Carpenter names Bass,
Bass & Associates, Acadian, Inc., TSAR, Cheatham, and John and
Jane Doe as third-party defendants.  Acadian LLC is not named
under the "PARTIES" heading and the pleading is somewhat unclear
concerning whether it seeks relief from the entity.  Neverthe-
less, it is clear that Carpenter alleges that Acadian LLC is the
alter ego of both Bass and Cheatham.  As noted infra, he also
suggests in a recent status report that he is in fact suing
Acadian LLC.
     The amended third-party complaint alleges claims for (1)
violation of the Uniform Fraudulent Transfer Act, West Virginia
Code §§ 40-1A-1 et seq. (Count One), (2) fraud (Count Two), (3)
                                              (continued...)

5

Carpenter alleges that immediately following entry of the TRO and preliminary injunction, Bass and other unnamed individuals conspired to strip all, or substantially all, of the valuable assets from Acadian LLC and place them under the nominal ownership of other individuals and entities under the control of Bass or his alleged co-conspirators.

On May 18, 2009, Carpenter moved to enjoin Bass, Cheatham and other individuals and entities, "from continuing to fraudulently transfer[] the assets of Acadian . . . LLC . . . ." (Mot. at 2).  He additionally sought to compel the third party defendants to produce an accounting of all transactions with Acadian LLC and its "alter ego" Acadian Inc. (Id.)  He further requested, inter alia, an order appointing a receiver and compelling the third-party defendants to restore all assets putatively looted from Acadian LLC.

Following a May 26, 2009, prehearing conference, the court entered an agreed order on June 3, 2009, that, inter alia, enjoined Bass & Associates, Acadian LLC, and Acadian Inc. from

---

[1](...continued)
civil conspiracy (Count Three), (4) criminal assignment and receipt of assets to defeat creditors (Count Four), (5) breach of fiduciary duty (Count Five), and (6) breach of the corporate opportunity doctrine (Count Nine).  Counts Six, Seven, and Eight appear to be omitted.

engaging in any transfer or assignment of any assets of either of the two Acadian entities.  That same day, Bass filed a petition for relief under Chapter 7 ("Bass Bankruptcy") in the United States Bankruptcy Court for the Western District of Texas.

On December 30, 2009, the firm ("counsel for the Acadians") representing Acadian LLC and Acadian Inc. moved for clarification or, in the alternative, for leave to withdraw as counsel.  It revealed that Bass contacted it on May 26, 2009, to secure representation for the two entities.  At that time, Bass was the sole member of Acadian LLC.  Counsel for the Acadians noted the Bass Bankruptcy, along with the appointment of C. Daniel Roberts as trustee.  Following his appointment, Trustee Roberts retained attorney Kell C. Mercer as his counsel.

On December 16, 2009, counsel for the Acadians learned from Mr. Mercer that certain documents had been created by Trustee Roberts that purported to effect the replacement of Bass as the sole member of Acadian LLC and to substitute Trustee Roberts in his stead.  Trustee Roberts then, perhaps simultaneously, removed Cheatham as the sole manager of Acadian LLC and substituted Gregory Milligan.  Bass, through his bankruptcy counsel, apparently challenged the substitutions. That challenge appears to have prompted Trustee Roberts to file

7

in the bankruptcy court on December 23, 2009, an "Emergency
Motion for Interim and Final Orders Enforcing Automatic Stay and
for Sanctions."[2]   In light of these and other actions by Trustee
Roberts, Bass, and Bass & Associates, counsel for the Acadians on
December 30, 2010, filed the motion for clarification.  It
requested that the court either determine who should be deemed
the client representative for Acadian LLC or permit counsel for
the Acadians to withdraw.  As noted, the bankruptcy court has
undertaken responsibility for adjudicating who is entitled to
govern the affairs of Acadian LLC.

          Also on December 30, 2009, Trustee Roberts filed the
motion to intervene and stay.  Trustee Roberts recited the
history of the Bass Bankruptcy.  He noted in particular that
Bass, during a sworn examination, testified in a false and
misleading manner concerning his assets and the control that he
exercised over certain entities.  Trustee Roberts also contended
that "the Debtor remains in control and continues to direct the
operations and assets of Bass & Associates . . . ."  (Mot. at 7).

_____

          [2]Trustee Roberts also apparently filed in the bankruptcy
court an "Emergency Motion for Authority to Take Actions with
Respect to Acadian [LLC]," ("Emergency Motion for Authority")
which sought confirmation that he was authorized to control and
direct Acadian LLC.  On January 14, 2010, the bankruptcy court
granted Trustee Roberts' Emergency Motion for Authority.

Trustee Roberts further alleged as follows:

>       Upon information and belief, it appears that the
> Debtor commenced methodically and systematically
> transferring his remaining non-exempt assets,
> including, but not limited to his interest in CB
> Energy, LLC, as well as valuable assets held by Acadian
> [LLC] and Acadian Inc.  Prior to January of 2009, it is
> believed that Acadian [LLC] and/or Acadian Inc. owned
> or managed working interests in over 2,000 wells and
> held overriding royalty interests across 600,000 acres
> of oil and gas minerals in well established areas of
> development in West Virginia and Pennsylvania.

>       Upon information and belief, the Debtor
> orchestrated a scheme to transfer assets from Acadian
> [LLC] and/or Acadian Inc. to CB Energy, LLC, and then
> transferred his interest in CB Energy, LLC in exchange
> for promised consideration in excess of three million
> dollars. Whether or not the Debtor actually has
> received this consideration as yet is unknown. The
> Debtor has provided false and misleading information
> regarding these matters and he is not a reliable
> resource for obtaining information. Extensive
> third-party discovery in the Bass Bankruptcy Adversary
> [, wherein Trustee Roberts has sued Bass,[3]] will be
> necessary.  Upon information and belief, other
> transfers exist that were orchestrated by the Debtor
> prior to 2009.

(Id. ¶¶ 9-10).

---

[3]Trustee Roberts also named as defendants in the Bass
Bankruptcy Adversary the following entities: (1) Acadian LLC, (2)
Acadian Inc., (3) Bass & Associates, (4) Peggy S. Bass,
individually and as trustee of the J. Howard Bass Trust, (5)
Cheatham, and (6) TSAR.  In the Bass Bankruptcy Adversary,
Trustee Roberts objected to Bass' discharge and seeks recovery of
assets concealed and fraudulently transferred by Bass, including
those transferred out of Acadian LLC, as also challenged by the
third-party action herein.  He further sought a determination of
the alter ego status of Acadian LLC, Acadian Inc., and Bass &
Associates, along with related relief and damages against the
other entities who are third-party defendants in this action.

Trustee Roberts asserted that he was moving to intervene and stay this case in order to protect Acadian LLC assets pending the outcome of the Bass Bankruptcy Adversary. (See Memo. in Supp. at 15 ("The outcome of this lawsuit could have a significant impact on, potentially diminishing the value of, the most valuable assets of the Debtor's bankruptcy estate. Additionally, many, if not all, the causes of action asserted in this lawsuit belong to the Debtor's bankruptcy estate and cannot be maintained by Carpenter or any other creditor.")).  Trustee Roberts additionally observed as follows:

> The[ claims in the Carpenter third-party complaint] . . . are very similar to, if not identical to, the claims asserted by the Trustee against the same parties in the Bass Bankruptcy Adversary.  The fraudulent transfer cause of actions against the Debtor and Acadian are property of the Debtor's bankruptcy estate and must be resolved through the Bass Bankruptcy Adversary.
>
> Sunshine and Robert Shane Polan asserted a counterclaim against Acadian [LLC] and Bass & Associates and cross-claim against the Debtor seeking restitution, compensation, damages and other relief if any transactions with Acadian and/or Bass & Associates to which they were party are reversed, rescinded, or declared void.

(Memo. in Supp. at 10, 12 (stating also that "[t]he Trustee asserts that the Plaintiffs [in the principal action] are the alter-ego of the Debtor and have been used to perpetrate fraud upon the creditors of the Debtor by placing assets beyond their

10

reach. The claims in this proceeding are directly linked to the alleged actions of the Debtor in perpetrating these acts of fraud and the Trustee is in the unique position of having the standing to maintain such claims.")).

On January 14, 2010, TSAR and Cheatham, joined on January 15, 2010, by Bass and Associates, opposed Trustee Roberts' motion to intervene and stay, asserting that the motion was untimely given the posture of this civil action and that other parties herein are adequately representing Trustee Roberts' interests.  TSAR and Cheatham note that Trustee Roberts effectively took control of Acadian LLC and that the entity he steered was capable of protecting and advancing his litigation goals and estate interests.  They asserted in sum as follows:

> In the final analysis, the Trustee asks this Court to permit an aggressively litigated, multi-party civil action, that is nearly resolved, to sit fallow for two or more years pending resolution of a bankruptcy proceeding. Imposing such a stay would severely prejudice these parties: they would be forced to incur duplicative legal fees and costs because, once the case is resumed, virtually everything would have to be repeated just to place them in the same position they occupy right now. A stay under such circumstances is unjustified and should be denied.

(Resp. at 3; see also Jt. Stat. Rep. at 9 ("There is serious prejudice to T[SAR] arising from the scandalous and unsupported claims of Carpenter continuing to cloud the reputation and borrowing power of T[SAR]."))

On February 1, 2010, Acadian LLC filed a petition for relief under Chapter 7 ("Acadian LLC Bankruptcy") in the United States Bankruptcy Court for the Western District of Texas.  The Suggestion of Bankruptcy filed herein the next day by Carpenter clarifies somewhat his intentions concerning the reach of the third-party complaint.  He asserts that "the Third Party Plaintiff's cause of action <u>against</u> Acadian . . . LLC, which is based upon prepetition claims, is stayed."  (Sugges. at 2 (emphasis added)).

On February 3, 2010, noting the ongoing proceedings in the bankruptcy court, and awaiting further action therein, the court stayed this civil action and postponed a decision on counsel for the Acadian's motion for clarification and Trustee Roberts' motion to intervene and stay.  The parties were directed to file a joint status report no later than February 17, 2010.

On February 17, 2010, the court received status reports from the parties.  The status report filed by Carpenter notes, <u>inter</u> <u>alia</u>, that Bass was incarcerated on February 16, 2010.

On June 21, 2010, the court directed the parties to file another status report respecting developments in the bankruptcy court.  The status report submitted by Carpenter

provides as follows:

> With regard to the status of the Texas bankruptcy
> proceedings, and their impact on this litigation,
> Carpenter's position is that this Court should maintain
> the stay that is currently in effect to permit counsel
> for the Trustee in the Bass [B]ankruptcy . . . to
> complete the depositions he has planned, including the
> deposition of Richard Cheatham.
>
> Carpenter disagrees with the suggestion that the
> best way of dealing with the imposition of the stay
> caused by Acadian LLC's bankruptcy case would be to
> sever all non-stayed claims so that there is no
> confusion among the various litigants as to which
> matters are stayed and which matters are not.
>
> As a pragmatic matter, there is no way to avoid
> confusion at this time because all of the parties to
> this litigation, including Cheatham/T[SAR], are
> potentially subject to being collapsed into a single
> entity, based upon the evidence adduced to date in the
> 2004 examinations in Texas. Carpenter suggests that
> those examinations, including the examination of
> Cheatham/T[SAR] be allowed to proceed before lifting
> the stay in this proceeding.

(Stat. Rep. at 1-2).

The joint status report submitted by the remaining non-debtor parties or interested parties, including Trustee Roberts and John Patrick Lowe, bankruptcy trustee for Acadian LLC, is summarized as follows:

> Trustee Roberts asserts, without challenge by any other
> party or interested party, that the motions to clarify
> and to stay are now moot in light of the Chapter 7
> filing by Acadian LLC.[4]

---

[4]Regarding the motion for clarification, the bankruptcy court has found and concluded that Trustee Roberts was within his authority in replacing Cheatham and appointing Milligan.  Trustee Roberts asserts that the bankruptcy court's action "conclusively
(continued...)

> Trustee Roberts is contemplating a motion to
> substantively consolidate the Bass Bankruptcy and the
> Acadian LLC Bankruptcy.
>
> The Bass Bankruptcy Adversary has been closed
> [effective May 17, 2010], with all claims therein
> either adjudicated in favor of Trustee Roberts or
> dismissed without prejudice.
>
> Trustee Roberts, based in part upon Bankruptcy Rule of
> Procedure 2004 Examinations conducted over the last
> several months, asserts that he will institute a new
> adversary proceeding seeking a determination that Bass
> & Associates and other unnamed entities are Bass' alter

---

[4](...continued)
resolved the concerns raised by . . . [counsel for the Acadians]
in the Motion for Clarification regarding control of Acadian
LLC." (Jt. Stat. Rep. at 3). The recent Chapter 7 petition
filed by Acadian LLC is an additional reason Trustee Roberts
asserts that the motion for clarification is moot. (See id. at 3
("Trustee Lowe now is the only person with authority to direct
and control the bankruptcy estate of Acadian LLC. Unless Trustee
Lowe seeks and obtains approval from the Bankruptcy Court to
retain [present counsel for the Acadians] . . . they are without
authority to represent Acadian LLC or take any action on behalf
of Acadian LLC in this case.") ).

Regarding the motion to intervene and stay, Trustee Roberts
asserts that the filing of Acadian LLC's Chapter 7 petition
stays, pursuant to 11 U.S.C. § 362, any litigation pending
against it. (Id. at 4 ("The only claims that are not stayed in
this proceeding are those asserted against non-debtor persons
and/or entities and that do not involve property of the
bankruptcy estate of either . . . Bass and/or Acadian LLC.")
(emphasis in original)). It is noted that Trustee Lowe, not
Trustee Roberts, appears vested with the authority to control and
pursue any claims instituted by Acadian LLC. See In re Bogdan,
414 F.3d 507, 512 (4th Cir. 2005)("The trustee is specifically
authorized to 'collect and reduce to money the property of the
estate for which such trustee serves, and close such estate as
expeditiously as is compatible with the best interests of parties
in interest.'. . . More specifically, 'property of the estate' .
. . has 'uniformly been interpreted to include causes of
action.'").

egos.  He asserts the filing of the adversary proceeding is "imminent."  (Jt. Stat. Rep. at 6 n.2).

The positions of the respective signatories of the joint status report are as follows:

Trustee Lowe:  Trustee Lowe represents that he "has not read any of the pleadings in this civil action" but avers that Acadian LLC and its assets are protected by the automatic stay.  (Jt. Stat. Rep. at 6).[5]

Bass & Associates:  Bass & Associates notes that all claims "by or against" Acadian LLC are stayed.  The claims asserted by Bass & Associates against Carpenter, Sunshine, and the Polans relating to certain personal items located on the property, along with the claims asserted by Carpenter and the Polans against Bass & Associates "are currently unaffected" by the Bass Bankruptcy and the Acadian Bankruptcy and the court should lift the stay as to these claims.

Acadian Inc.:  Acadian Inc. asserts that the claims alleged against it in the third-party complaint are unaffected by the automatic stay.  It requests that the stay previously imposed by the court be lifted as to these claims.

_____

[5]In a June 14, 2010, Motion to Approve Compromise and Settlement of Claims ("motion for compromise") filed by Trustee Lowe in the bankruptcy court, it is asserted that he has since his appointment "been investigating and gathering information related to the assets of Acadian [LLC] since the case was filed." (Trust.' Mot. to Approv. Comprom. and Settlm't of Claims ("motion to approve") at 2).  The motion for compromise requests the bankruptcy court's approval of a proposed settlement between Acadian LLC and TSAR.  If approved, the settlement would result in TSAR paying into the Acadian LLC bankruptcy estate the sum of $125,000, with the parties releasing one another from any further claims.  While unclear, it appears that the proposed settlement provides an auction mechanism for the sale of certain oil and gas leases.  On July 12, 2010, Trustee Roberts objected to the proposed settlement.  Following a July 21, 2010, hearing, the bankruptcy court granted the motion for compromise.

**TSAR**:  TSAR asserts that the claims alleged against it in the third-party complaint are unaffected by the automatic stay.  It requests that the stay previously imposed by the court be lifted as to these claims.

**Polans and Sunshine**:  The Polans and Sunshine note that the preliminary injunction was contingent upon the posting of a $50,000 bond and continuation of insurance coverage on the property.  They assert that Acadian LLC has ceased business and no longer appears to be in possession of the property.  They further contend that Trustee Lowe, given a lack of Acadian LLC assets, is ostensibly unable to obtain insurance coverage for the property.  The Polans and Sunshine thus assert that a continuation of the preliminary injunction is unsupported.[6]

In view of the substantial proceedings that have taken place, and continue to occur, in the bankruptcy court, the court now addresses the motion for clarification, the motion to intervene and stay, and the propriety of continuing the present stay of this action in its entirety.

II.

A.   Motion for Clarification and Motion to Intervene and Stay

Since the filing of the motion for clarification and the motion to intervene and stay, the matters of corporate governance and control of this litigation by and on behalf of

_____

[6]Despite this assertion, it does not appear that the Polans or Sunshine have sought a lifting order from the bankruptcy court for purposes of then seeking here a vacatur of the preliminary injunction earlier entered by the court.

Bass and Acadian LLC have largely diminished.  Acadian LLC is now a debtor.  Its affairs are in the hands of Trustee Lowe, who appears to be in the process of ascertaining the size and scope of the estate and how best to proceed toward liquidation.

In sum, no clarification is necessary respecting counsel for the Acadians at this time relating to their representation of Acadian LLC.  That attorney-client relationship appears to have terminated in view of the Acadian LLC Bankruptcy and the lack of any action on Trustee Lowe's part to retain counsel for the Acadians' continued services.  Nevertheless, in compliance with the automatic stay, and to assure that there is not a discontinuity of counsel for Acadian LLC, the court requests that Trustee Lowe formally notify counsel for the Acadians, with a courtesy copy to the court, whether he wishes their continued representation of the debtor in this action.  The court, accordingly, ORDERS that the motion for clarification be, and it hereby is, denied without prejudice.

Regarding the motion to intervene and stay, Trustee Roberts, the movant, asserts that the request is now moot.  The court agrees.  It is, accordingly, ORDERED that the motion to intervene and stay be, and it hereby is, denied without prejudice as being moot.

B.   Continuance of the Stay

As noted by the parties, the automatic stay does not reach the entirety of this action.  Typically the automatic stay applies only to the debtor and not its solvent fellow parties to a civil action.  See A.H. Robbins v. Piccinin, 788 F.2d 994, 1000 (4th Cir. 1986); Williford v. Armstrong World Indus., 715 F.2d 124, 126 (4th Cir. 1983).  Under "unusual circumstances," however, a stay may be extended to reach non-debtors.  Piccinin, 788 F.2d at 1000.  The exception is a narrow one.  Winters v. George Mason Bank, 94 F.3d 130, 133 (4th Cir. 1996).

One situation worthy of stay expansion was identified by the decision in Piccinin:

> [I]t would seem [the necessary unusual circumstances] . . . [arise] when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.

Piccinin, 788 F.2d at 1000; Credit Alliance Corp. v. Williams, 851 F.2d 119, 121 (4th Cir. 1988); see also Kreisler v. Goldberg, 478 F.3d 209, 213 (4th Cir. 2007); Hon. Nancy C. Dreher, Bankruptcy Law Manual § 2:1 (5th ed. elec. 2010) ("There are some court-developed circumstances where the stay may protect nondebtors.  For example, courts have held that . . . actions where the connection between the debtor and the third-party

18

defendant is so close that the debtor may be said to be the real party defendant are covered by the stay.").

Acadian LLC owns the property that is at the center of the principal action.  While nondebtor Bass & Associates is a co-plaintiff in the principal action, it occupies that role only for purposes of protecting certain personalty, namely the two vehicles explicitly named in the complaint and other items left unmentioned.  The apparently limited nature of Bass & Associates' claims, along with the operation of the automatic stay and transfer of control over Acadian LLC to Trustee Lowe, has thus practically left the principal action adrift for the time being.

As noted, the third-party action is not stayed in its entirety.  All claims against debtors Bass and Acadian LLC are encompassed within the automatic stay.  The propriety of allowing the continued prosecution of the third-party complaint against the remaining nondebtor parties, however, is at issue.  It is significant that Carpenter, the author of the third-party action, requests that his claims remain stayed in their entirety at least pending the Rule 2004 Examinations of Cheatham and TSAR.  Of greater moment, however, is the central allegation in the amended third-party complaint:

> [A]ll of the corporate or other commercial entities
> identified as Third Party Defendants are in fact alter

> egos of . . . Bass and/or . . . Cheatham.  With the
> assistance and active participation of . . . Cheatham,
> . . . Bass has constructed an elaborate facade of
> fictional entities to conceal his true ownership of
> valuable assets and to shield his commercial activities
> from a long line of judgment creditors whose dealing
> with . . . Bass preceded the events involved in this
> litigation.

(Am. Third-Pty. Compl. ¶ 40).

        The allegation presents the unique circumstances
contemplated explicitly by the panel in Piccinin.  Carpenter
asserts that there is such an identity between debtors Bass and
Acadian LLC on the one hand and the non-debtor third-party
defendants on the other that the former may be said to be one or
more of the real parties in interest.  If Carpenter's theory is
borne out, a judgment against the nondebtor defendants would, in
effect, be a judgment against one or more of the debtors.  This
circumvention of the policy behind the automatic stay is the
precise evil sought to be avoided by the panel in Piccinin.

        Trustee Roberts asserts that "perhaps the best way of
dealing with the imposition of the stay . . . would be to sever
all non-stayed claims so that there is not confusion among the
various litigants as to which matters are stayed and which
matters are not."  (Jt. Stat. Rep. at 5).  In view of the alter-
ego allegations, however, it is difficult to apprehend how that
confusion could be avoided, much less the impact upon the

20

debtors' estates if an alter ego relationship is ultimately found to exist via a piecemeal trial involving only the nondebtor third-party defendants.

The court is mindful of the general concerns expressed by Bass & Associates, Acadian Inc., and TSAR respecting delay. It seems clear, however, that the Acadian LLC Bankruptcy and the Bass Bankruptcy, along with related proceedings, are progressing expeditiously. Depending upon the outcome of the 2004 Examinations and apparent ongoing negotiations between some of the parties, it may ultimately be the case that events in the bankruptcy court will substantially alter, or even obviate, the need to continue the litigation here, resulting in substantial cost savings. In any event, the court is obliged to honor not simply the letter, but also the spirit, of the automatic stay. That obligation warrants the continued stay of this action in its entirety pending further developments in the bankruptcy court that would warrant a lifting order.

The court, accordingly, ORDERS that the current stay in this action be, and it hereby is, continued pending the further order of the court. It is further ORDERED that the non-debtor parties, along with Trustee Roberts and Trustee Lowe, be, and they hereby are, requested to file quarterly status reports

beginning October 1, 2010, summarizing the status of the
proceedings in the bankruptcy court, the effect of
that litigation, if any, upon the further proceedings herein, and
any other impending, material developments which may impact the
litigation in either the bankruptcy court or this court.


        The Clerk is directed to forward copies of this written
opinion and order to all counsel of record and any unrepresented
parties.

                        DATED: July 30, 2010


                        _____
                        John T. Copenhaver, Jr.
                        United States District Judge